CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FELICIANO MARTINEZ, on behalf of himself and      :   Case No.21-CV-4333
others similarly situated,                                            :
                                                                                    :
                                            Plaintiff,                        :   **FLSA COLLECTIVE**
                                                                                    :   **ACTION COMPLAINT**
           -against-                                                          :
                                                                                    :
CGP ENTERPRISES, INC. d/b/a VILLAGE TAVERNA, :  **Jury Trial**
PETER KAROUNOS, GEORGE KAROUNOS, and       :  **Demanded**
JOHN DOES 1-5,                                                         :
                                                                                    :
                                            Defendants.                  :
-----------------------------------------------------------------X

Plaintiff, FELICIANO MARTINEZ (hereinafter, "Plaintiff"), on behalf of himself and other similarly situated employees, by and through his undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants CGP ENTERPRISES, INC. d/b/a VILLAGE TAVERNA ("CGP ENTERPRISES"), PETER KAROUNOS, GEORGE KAROUNOS, and JOHN DOES 1-5 (the "Individual Defendants") (CGP ENTERPRISES and the Individual Defendants are collectively referred to herein as the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), he is entitled to recover from Defendants: (a) unpaid minimum wages, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid "spread of hours" premium for each day that Plaintiff's work shift exceeded ten (10) hours, (c) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5. Plaintiff is a resident of New York County, New York.

6. Defendant, CGP ENTERPRISES, is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 81 University Place, New York, New York 10003.

7. Defendant, CGP ENTERPRISES, owns and operates a Greek restaurant doing business as "Village Taverna," located at 81 University Place, New York, New York 10003 (the "Restaurant").

8. The Individual Defendants are the officers, shareholders and/or managing agents of CGP ENTERPRISES and, as such, are the owners, directors, proprietors, supervisors, and/or managing agents of CGP ENTERPRISES, who actively participate in the day-to-day operations of the Restaurant and acted intentionally and maliciously and are employers pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are jointly and severally liable with CGP ENTERPRISES.

9. The Individual Defendants each exercise control over the terms and conditions of the employees' employment in that they have the power and authority to, and do in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and/or (v) create and maintain employment records.

10. The Individual Defendants are present on the premises of the Restaurant on a daily basis, actively supervise the work of the employees, and mandate that all issues concerning the workers' employment – including hours worked and pay received – be authorized and approved by them.

11. Upon information and belief, at least within each of the three (3) most recent years relevant to the allegations herein, CGP ENTERPRISES was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for

commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

12. Defendants employed Plaintiff to work as a non-exempt food delivery worker, busboy and porter at the Restaurant from in or about October 2017 through on or about March 30, 2021.

13. The work performed by Plaintiff was directly essential to the business operated by Defendants.

14. Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

15. Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

16. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

17. Defendant, PETER KAROUNOS, is the Chief Executive Officer and a shareholder of CGP ENTERPRISES.

18. Defendant, GEORGE KAROUNOS, is an officer and shareholder of CGP ENTERPRISES.

19. Defendants PETER KAROUNOS and GEORGE KAROUNOS hire employees to work as managers and/or supervisors to participate in the day-to-day operation of the Restaurant.

20. Defendants PETER KAROUNOS and GEORGE KAROUNOS hired JOHN DOES, known to Plaintiff simply as "Angelo" and "Jose," to work as managers/supervisors of the Restaurant, and were two of Plaintiff's direct supervisors. Through authority granted to them by Defendants PETER KAROUNOS and GEORGE KAROUNOS, Angelo and Jose assisted in running the day-to-day operation of the Restaurant, including, but not limited to hiring and firing employees, setting employee work schedules and supervising the employees.

21. Defendants PETER KAROUNOS and GEORGE KAROUNOS themselves also actively participate in the day-to-day operation of the Restaurant. For instance, Defendants PETER KAROUNOS and GEORGE KAROUNOS personally supervise and direct the work of the employees, including the managers/supervisors, and instruct the employees how to perform their jobs.

22. Although Defendants PETER KAROUNOS and GEORGE KAROUNOS provide managers and supervisors with some authority to effectively run the day-to-day operation of the Restaurant, Defendants PETER KAROUNOS and GEORGE KAROUNOS are jointly create, implement, and approve all business policies and make all crucial business decisions, including decisions concerning the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

23. In or about October 2017, Defendants hired Plaintiff to work at the Restaurant as a non-exempt food delivery worker, busboy and porter.

24. Neither at the time of hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken, and corresponding overtime rate of pay.

25. Plaintiff worked for Defendants in those capacities until on or about March 30, 2021.

26. From the beginning of his employment and continuing through in or about December 2018, Plaintiff worked six (6) days per week, and his work scheduled consisted of five and one-half (5½) hours per day from 5:00 p.m. until 10:30 p.m., thereby working approximately thirty-three (33) hours per week.

27. From the beginning of his employment and continuing through in or about December 2017, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $9.50 per hour.

28. Beginning in or about January 2018 and continuing through in or about December 2018, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $10.85 per hour.

29. Beginning in or about January 2019 and continuing through on or about January 14, 2020, Plaintiff worked five (5) days per week, and his work scheduled consisted of five and one-half (5½) hours per day from 5:00 p.m. until 10:30 p.m. four (4) days per week, and eleven and one-quarter (11¼) hours from 11:15 a.m. until 10:30 p.m. one (1) day per week, thereby working approximately thirty-three and one-quarter (33¼) hours per week.

30. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $12.50 per hour.

31. Plaintiff did not work for Defendants between on or about January 15, 2020 through on or about August 10, 2020.

32. Upon returning to work for Defendants on or about August 11, 2020 and continuing through on or about August 31, 2020, Plaintiff worked five (5) days per week, and his work scheduled consisted of nine and three-quarter (9¾) hours per day from 11:15 a.m. until 9:00 p.m. three (3) days per week, and four (4) hours per day from 5:00 p.m. until 9:00 p.m. two (2) days per week, thereby working approximately thirty-seven and one-quarter (37¼) hours per week.

33. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $12.50 per hour.

34. Beginning in or about September 2020 and continuing through on or about February 5, 2021, Plaintiff worked four (4) days per week, and his work scheduled consisted of ten and one-quarter (10¼) hours per day from 11:15 a.m. until 9:30 p.m. two (2) days per week, and four (4) hours per day from 5:00 p.m. until 9:00 p.m. two (2) days per week, thereby working approximately twenty-eight and one-half (28½) hours per week.

35. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $12.50 per hour.

36. Beginning on or about February 6, 2021 and continuing through the remainder of his employment on or about March 30, 2021, Plaintiff worked four (4) days per week, and his work scheduled consisted of ten and one-quarter (10¼) hours per day from 11:15 a.m. until 9:30 p.m. two (2) days per week, five and one-half (5½) hours from 4:00 p.m. until 9:30 p.m. one (1) day per week, and four (4) hours from 5:00 p.m. until

7

9:00 p.m. one (1) day per week, thereby working approximately thirty (30) hours per week.

37. During this period, Plaintiff was not paid proper minimum wages. During this period, Plaintiff was paid at the rate of $12.50 per hour.

38. Plaintiff was required to punch a time clock or other time-recording device at the start and end of her work shift.

39. Defendants knowingly and willfully operate their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff and other similarly situated employees.

40. Defendants knowingly and willfully operate their business with a policy of not paying a "spread of hours" premium to Plaintiff and other similarly situated employees, in direct contravention of the New York State Labor Law and Regulations.

41. At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient time and pay records.

## COLLECTIVE ACTION ALLEGATIONS

42. Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former non-exempt tipped employees who have been or were employed by Defendants between May 13, 2018 through the date that the opt-in period expires as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage rate (the "Collective Action Members").

43. The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

44. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

45. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

46. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it

virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

47. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a. Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

b. Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

c. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d. Whether Defendants failed to pay Plaintiff and the Collective Action Members minimum wages, in violation of the FLSA and the regulations promulgated thereunder;

e. Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

f. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

48. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

49. Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

50. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "49" of this Complaint as if fully set forth herein.

51. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

52. At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

53. Upon information and belief, at least within each of the three (3) most recent years relevant hereto, CGP ENTERPRISES has had annual gross revenues in excess of $500,000.

54. Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and the Collective Action Members for hours worked.

55. Defendants willfully failed to pay Plaintiff and the Collective Action Members minimum wages in the lawful amount for hours worked.

56. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action Members at the statutory minimum wage rate when they knew or should have known such was due and that non-payment of minimum wages would financially injure Plaintiff and the Collective Action Members.

57. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

58. Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

59. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

60. Due to the reckless, willful and unlawful acts of Defendants, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages, an equal amount as liquidated damages, and prejudgment interest thereon.

61. Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

62. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "61" of this Complaint as if fully set forth herein.

63. Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

64. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff minimum wages in the lawful amount for hours worked.

65. Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours. New York State Department of Labor Regulations § 146-1.6.

66. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay "spread of hours" premium to Plaintiff for each day his work shift exceeded ten (10) hours pursuant to New York State Department of Labor Regulations.

67. Defendants failed to properly disclose or apprise Plaintiff of his rights under the New York Labor Law.

68. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

69. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net

wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

70. Defendants failed to notify Plaintiff at the time of hire or when his rate of pay changed of his rate of pay, any tip credits taken, and his regularly designated payday, in contravention of New York Labor Law § 195(1).

71. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, unpaid "spread of hours" premium, statutory damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

72. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as statutory damages pursuant to the New York State Wage Theft Prevention Act.

**PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiff, FELICIANO MARTINEZ, on behalf of himself and all similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

(a)  An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)  An award of unpaid "spread of hours" premium due under the New York Labor Law;

(c)  An award of liquidated damages as a result of Defendants' failure to pay minimum wages pursuant to 29 U.S.C. § 216;

(d) An award of liquidated damages as a result of Defendants' failure to pay minimum wages and "spread of hours" premium pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(e) An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(f) An award of prejudgment and post-judgment interest;

(g) An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(h) Such other and further relief as this Court determines to be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
May 13, 2021

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
10 Grand Central
155 East 44th Street – 6th Floor
New York, NY 10017
T. (212) 209-3933
F. (212) 209-7102

By: _____
Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, **Feliciano Martinez**, am an individual currently or formerly employed by **Village Taverna**, and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
April 22, 2021

_____
Feliciano Martinez

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO: Peter Karounos and George Karounos

PLEASE TAKE NOTICE that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Feliciano Martinez (and others similarly situated) intends to charge you and hold you personally liable as one of the ten largest shareholders of CGP Enterprises, Inc. for all debts, wages, and/or salaries due and owing to him as a laborer, servant and/or employee of the said corporation for services performed by him for the said corporation within the six (6) years preceding the date of this notice and has expressly authorized the undersigned, as his attorneys, to make this demand on his behalf.

Dated: New York, New York
      May 13, 2021

CILENTI & COOPER, PLLC
*Attorneys for Plaintiff*
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017
T. (212) 209-3933
F. (212) 209-7102

By: _____
    Justin Cilenti